Sovann KHEM, Petitioner,

v.

John ASHCROFT, United States
Attorney General,
Respondent.

No. 02–2725.

United States Court of Appeals,
First Circuit.

Submitted Aug. 8, 2003.

Decided Aug. 26, 2003.

Robert M. Warren, was on brief, for petitioner.

Robert D. McCallum, Jr., Assistant Attorney General, Civil Division, Linda S. Wendtland, Assistant Director, and Ann Carroll Varnon, Attorney, were on brief, for respondent.

Before LYNCH, LIPEZ, and HOWARD, Circuit Judges.

LYNCH, Circuit Judge.

Sovann Khem, a native and citizen of Cambodia, entered the United States on July 13, 1997, and applied for asylum on December 3, 1997. Khem claims a well-founded fear of persecution based on her political opposition to the Cambodian People's Party (CPP) and her husband's death while fighting CPP troops. Her application for asylum and withholding of removal was denied by an Immigration Judge (IJ). The Board of Immigration Appeals (BIA) summarily affirmed without opinion. Khem seeks review of this decision. We affirm.

## I.

Because the IJ found Khem's testimony credible, we describe the facts as she re-counted them at her hearing and in her application for asylum.

On July 5, 1997, a bloody coup erupted in Cambodia in which the CPP overthrew the National United Front of an Independent, Neutral, Peaceful and Cooperative Cambodia (FUNCINPEC). At the time, Sovann Khem was residing in Phnom Penh, Cambodia, with her husband of almost four years. Although Khem and her husband had never registered their marriage with the civil authorities in Cambodia, they were married in a Buddhist ceremony. Her husband was a bodyguard and soldier for FUNCINPEC, and Khem herself had been a member of FUNCINPEC since 1994. She served as an election campaign worker, receiving a salary of sixty dollars per month to travel from home to home recruiting for FUNCINPEC.

On July 6, 1997, during the fighting that accompanied the coup, Khem's husband was killed in combat by CPP forces while guarding a weapons warehouse for FUNCINPEC. A few of Khem's co-workers told her that all FUNCINPEC members were in danger and that she should go into hiding. After attending her husband's funeral service, Khem left Cambodia on July 11, 1997. She entered the United States on a tourist visa two days later.

Khem applied for asylum on December 3, 1997. Conceding that she was removable, Khem stated that she believed she was in danger because of her support for FUNCINPEC and her status as the widow of a FUNCINPEC soldier. After reviewing Khem's asylum application and conducting a hearing in which Khem testified, the IJ denied her claims for asylum and withholding of removal, but granted her request for voluntary departure. The IJ credited Khem's testimony as to her involvement in FUNCINPEC and her husband's death, but determined that "her testimony fails to establish that a reason-

able person in her circumstances would fear persecution in Cambodia, or that she has, in fact, suffered past persecution." The IJ concluded that there was no evidence that Khem's husband had been singled out for persecution; he was killed during an armed battle. Moreover, the IJ found that even if he had been singled out, there was no evidence that Khem herself had been or would be targeted because of her husband's political beliefs. Finally, relying on country conditions reports, the IJ determined that Khem's fears based on her own membership in FUNCINPEC were not objectively reasonable because low-level party members such as herself have not been targets of persecution.

The BIA affirmed the IJ's decision without opinion, citing 8 C.F.R. § 1003.1(a)(7) (2003) (formerly 8 C.F.R. § 3.1(e)(4)). On appeal, Khem challenges the BIA's summary affirmance, arguing that the IJ's opinion is not supported by substantial evidence.

## II.

▮▮▮ The BIA's determinations on the merits for claims of asylum or withholding of removal are conclusive if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (internal quotation marks omitted); *Albathani v. INS*, 318 F.3d 365, 372 (1st Cir.2003). To reverse the BIA, we must be persuaded that "the evidence not only *supports* that conclusion, but *compels* it." *Elias–Zacarias*, 502 U.S. at 481 n. 1, 112 S.Ct. 812; *Albathani*, 318 F.3d at 371.

▮▮▮ Where the BIA has issued a summary affirmance under 8 C.F.R.

§ 1003.1(a)(7), "we treat the findings and conclusions of the IJ as the Board's own opinion." *Herbert v. Ashcroft*, 325 F.3d 68, 71 (1st Cir.2003). Like a BIA decision, an IJ decision that has been affirmed without opinion may be reversed only if "the evidence is so compelling that no reasonable fact-finder could fail to reach the contrary conclusion." *Oliva–Muralles v. Ashcroft*, 328 F.3d 25, 27 (1st Cir.2003).

▮▮▮ The record in Khem's case does not compel the conclusion that Khem is entitled to asylum. To be eligible for asylum, an applicant bears the burden of establishing that he or she qualifies as a "refugee" within the meaning of 8 U.S.C. § 1101(a)(42)(A). *Id.* § 1158(b)(1); 8 C.F.R. § 208.13(a) (2003). Applicants can meet this burden in two ways. First, they can demonstrate past persecution on the basis of race, religion, nationality, membership in a particular social group, or political opinion. *Yatskin v. INS*, 255 F.3d 5, 9 (1st Cir.2001); 8 C.F.R. § 208.13(b)(1). Such a showing creates the presumption of a well-founded fear of future persecution. *Id.* Second, applicants can establish that they have a well-founded fear of future persecution based on one of the five statutory grounds. *El Moraghy v. Ashcroft*, 331 F.3d 195, 202–03 (1st Cir.2003). To do so, they must demonstrate that their fear is both genuine and objectively reasonable. *See id.* at 203.

Khem makes no claim of past persecution. Instead, she argues that she fears future persecution because of her husband's role as a soldier in FUNCINPEC and her own party membership. The record does not compel a rejection of the IJ's determination that Khem's fear is not objectively reasonable.[1] As to Khem's fear of persecution for her husband's activities,

---

1. Petitioner suggests that the IJ's reasoning is flawed because the IJ failed to state the significance of Khem's experiences in evaluating her subjective fear of persecution. But the IJ did not dispute the genuineness of Khem's subjective fear. Instead, the IJ rested the

there is no evidence that her husband was ever a target of persecution. Although killed by CPP forces, he died in an armed conflict that erupted after the CPP coup; he was not one of the FUNCINPEC members singled out for persecution by the CPP. Also, Khem presented no evidence of a threat to her based on her husband's political views. She testified that she attended her husband's cremation ceremony at a pagoda before leaving the country and that no retaliation resulted. The IJ had sufficient evidence to conclude that Khem's fears of persecution on the basis of her husband's role in FUNCINPEC were not objectively reasonable.

Similarly, as to Khem's own membership in FUNCINPEC, the evidence does not compel the conclusion that her fears of persecution were objectively reasonable. Khem was a low-level party member. She testified that she never made public speeches about the party and never held a party office. She further conceded that she was "not too sure" about FUNCINPEC's beliefs and that she "d[id]n't know much" about its opposition to the CPP. Substantial evidence supports the IJ's conclusion that low-level party members such as Khem are not likely to face future persecution. Country conditions reports indicate that the CPP targeted active and visible FUNCINPEC members after the July 1997 coup, such as FUNCINPEC security and political officials and party sympathizers in the Cambodian military and police force. Although Khem testified that co-workers warned her that all FUNCINPEC members were in danger, the country conditions reports do not document persecution of low-level party members, and Khem provided neither evidence of such persecution nor a reason for the difficulty of obtaining such evidence.[2] To the contrary, Khem admitted in her testimony that her older brother is a member of FUNCINPEC but has suffered no harm despite continuing to live in Cambodia. As this court has previously noted, "[t]he fact that close relatives continue to live peacefully in the alien's homeland undercuts [her] claim that persecution awaits [her] return." *Guzman v. INS,* 327 F.3d 11, 16 (1st Cir.2003) (citing *Aguilar–Solis v. INS,* 168 F.3d 565 (1st Cir.1999)). Her claim is further undercut by the fact, noted in the IJ's opinion, that violence has subsided in Cambodia following the formation of a coalition government between FUNCINPEC and the CPP in November 1998.

For the same reasons, the record does not compel the conclusion that Khem is entitled to withholding of removal. *See Guzman,* 327 F.3d at 16 ("[A] petitioner who fails to satisfy the asylum standard automatically fails to satisfy the standard for withholding of deportation." (citing *Alvarez–Flores v. INS,* 909 F.2d 1, 4 (1st Cir.1990))).

### III.

We ***affirm*** the denial of the application for asylum and withholding of removal. The order granting voluntary departure stands.

---

rejection of Khem's asylum claim on the finding that her subjective fear was not objectively reasonable.

**2.** Khem suggests that she need not provide such evidence because her membership in FUNCINPEC "establishes that there is a pattern or practice in [Cambodia] of persecution of groups of persons similarly situated ... on account of ... membership in a particular social group." Pet. Br. at 19 (quoting 8 C.F.R. § 208.13(b)(2)). But the record does not compel the conclusion that all FUNCINPEC members are similarly situated.