# United States Court of Appeals

## For the First Circuit

No. 06-1655

XIE MEI ZHENG,

Petitioner,

v.

ALBERTO R. GONZALES,
Attorney General of the United States,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Boudin, <u>Chief Judge</u>,
Lynch and Lipez, <u>Circuit Judges</u>.

<u>Wei Jia</u> and <u>Law Office of Wei Jia</u> on brief for petitioner.
<u>Michele R. Woodruff</u>, Attorney, United States Department of
Justice, <u>Peter D. Keisler</u>, Assistant Attorney General, and <u>Terri
J. Scadron</u>, Assistant Director, Office of Immigration Litigation,
on brief for respondent.

January 30, 2007

**LYNCH**, <u>Circuit Judge</u>.  Xie Mei Zheng, a native and citizen of China, petitions for review of a final order of removal from the Board of Immigration Appeals.  The Immigration Judge found Zheng not to be credible, and further concluded that even if Zheng were credible she had not established that she had a well-founded fear of persecution.  The BIA adopted the IJ's opinion and affirmed.  Because the IJ's decision is supported by substantial evidence, we deny the petition for review.

I.

Zheng was born in China in December 1981.  On January 6, 2000, she entered the United States using false travel documents.  Immigration authorities detained her, and on February 17, 2000, she was issued a Notice to Appear in deportation proceedings.  Zheng conceded that she was inadmissible, and she filed an application for political asylum on December 15, 2000.  She also applied for withholding of removal and protection under the Convention Against Torture (CAT).

Zheng's application stated that she feared persecution on the basis of her political opinion.  In an accompanying affidavit, she described an incident in which she had been expelled from junior high school for her opposition to China's birth control policies.  She claimed to have expressed her opinions in a "school news letter" in May 1997.  While the school principal had twice

asked her to "write a self-criticism withdrawing [her] opinion," she said she refused to do so and was expelled.

Zheng's affidavit also described a second incident. She stated that in August 1999 she and her boyfriend had attempted to obtain a marriage certificate. They were turned away because Zheng was underage. Zheng believed that because of this attempted marriage, Chinese authorities became suspicious that she was having a sexual relationship with her boyfriend and that she might be pregnant. According to Zheng, this suspicion was misplaced as she was a virgin and intended to remain so until marriage. Nonetheless, in September 1999 she was notified that she had to attend a gynecological exam. She did not go, as she feared an IUD would be inserted into her against her will. She then received a second notice in November 1999 and so she went into hiding at her aunt's home for about a month. After that, she came to the United States.

On December 17, 2004, a hearing on Zheng's claims was held before an IJ. Zheng was the only witness at the hearing, and her testimony was given in the Mandarin language with a translator present. Her asylum application and accompanying affidavit were entered into evidence, as were China's country reports from 1999 and 2003.

Zheng's testimony began by discussing her attempt to obtain a marriage license and the authorities' subsequent attempts

to make her submit to a gynecological exam.  She also testified about her expulsion from junior high school.

In her testimony about the junior high school incident, Zheng was asked where she wrote the "opinions" that caused her to be expelled.  As translated, her response was: "I just wrote out those in my class for what I feel, for what I felt."  Her attorney, who said that he spoke Mandarin, objected to the translation and told the IJ that what Zheng actually said is that she wrote in "some kind of publication specifically for the class, for the particular class. . . . It's like either in the paper form or on blackboard [sic], it's like a, you know, (indiscernible) after (indiscernible), that type of thing."  The IJ instructed Zheng's attorney to ask her further questions to clarify the issue.  Zheng clarified that she had written her articles in chalk on the blackboard in the back of the class -- it was the class policy that students were free to write about their opinions and about current events on the rear blackboard.  Zheng then testified that the principal instructed her to stop writing her anti-government views on the blackboard, that she did not comply, and that she was accordingly dismissed from her middle school.

Her counsel also moved to admit supporting documentary evidence, for both this incident and the marriage license incident,

but it does not appear that the documentary evidence was ever admitted for any purpose beyond identification.[1]

The IJ asked Zheng why she feared returning to China in light of the fact that she was now old enough to marry. He specifically asked if she feared that anything would happen to her on her return. Her response was "I'm not very clear, I'm not sure. Maybe I'll be thrown in jail . . . [b]ecause I was smuggle[d] out of the country and it's against law [sic]."

On cross-examination, the government's attorney asked Zheng why she had applied for a marriage license even though she knew she was ineligible, especially since her actions were likely to draw the attention of family planning officials. Her response was that she did not realize that the officials would come after

---

[1] The first supporting document was a letter purporting to be from Zheng's junior high school. According to the certified translation, the letter states that Zheng had "many times published articles on the class bulletin board" against China's birth control policies, and that she was being expelled for her refusal to stop doing this. The second document was a letter purporting to be from the regional birth control office; it informed Zheng that she was required to report for an examination. Zheng testified that both documents had been in the possession of her parents, who then mailed them to her in the United States after her arrival.

The documents had not been sent for authentication, and at the hearing the government's attorney argued that authentication was necessary. The IJ expressed frustration at delays in the case and stated for the record that "I'm very likely going to have to make a decision today based on what I have and what makes sense, and like that."

Prior to cross-examination, Zheng's attorney asked that the documents be admitted into evidence. The IJ responded by asking if it was OK to do this after cross-examination. Zheng's attorney agreed, but it does not appear that the issue was revisited at any later point in the proceedings.

her, and that she applied because she wanted to get married, and so she decided to try her luck.

Zheng was also questioned further about going into hiding. She testified that she first went into hiding in September of 1999 at an aunt's house -- specifically, her father's younger sister. She stated that she stayed at her aunt's house until she left China, and that she never had any contact with Chinese officials. Several questions later, however, she stated that she had hid at her aunt's house for a month, and that after a month she hid in another aunt's house -- this aunt being her mother's sister. When asked why she had only mentioned one aunt in her affidavit, Zheng responded that she had spent more time hiding with one of the aunts, and that at the time she wrote her affidavit she did not think it important to be specific about where she was hiding; she thought it sufficient to merely say she was hiding at her aunt's house.

The government's attorney questioned Zheng further on the junior high school incident, pointing out that her affidavit had referred to a "school newsletter." As translated, Zheng's response was that the articles were in her "class's publication," and that her understanding of a "school newsletter" was that it is like something published on a class blackboard. On further questioning, she stated that she had twice written articles on the blackboard, once in May 1997, and again in July 1997. When asked why the

-6-

second article was not mentioned in her earlier affidavit, Zheng responded that she felt it was not a major point.

Zheng conceded on cross-examination that she had never been forced to have an IUD inserted, had never had an abortion, had never had a tubal ligation, and that she had not been subjected to physically invasive techniques.

That day, the IJ orally denied Zheng's applications for asylum, withholding of removal, and CAT protection. As an initial matter, the IJ determined that Zheng was not credible. Because we do not reach that ground, we do not recount the evidence and reasoning on which the IJ relied.

The IJ independently concluded that the events Zheng had testified to, even if true, did not amount to past persecution. Additionally, he concluded that Zheng's testimony could not be enough to establish a well-founded fear of persecution. He noted that Zheng was now old enough to get married and have children, and that she would be "in the same position as anybody else in China" if she returned. The IJ further stated that Zheng had not met her burden for demonstrating eligibility for withholding of removal, nor did she show that she would likely be tortured in China.

In a brief per curiam order, the BIA adopted and affirmed the IJ's decision. The BIA stated that the IJ's adverse credibility determination was not clearly erroneous, and that even if Zheng's testimony were credible she had neither established that

-7-

she had suffered past persecution, nor established that she had a well-founded fear of future persecution based on a protected ground. Because the BIA adopted and affirmed the IJ's ruling, but also discussed some of the bases for the IJ's opinion, we review both the IJ's and BIA's opinions. Ouk v. Gonzales, 464 F.3d 108, 110 (1st Cir. 2006).

## II.

Zheng's petition for review challenges only the adverse credibility determination and the agency's determination that Zheng did not qualify for asylum even if credible.

In order to qualify for asylum, an alien must show that he or she is a "refugee" within the meaning of the immigration laws. See 8 U.S.C. § 1158(b)(1). The alien has the burden of proof for establishing that he or she is eligible for asylum. Id. § 1158(b)(1)(B)(iii); Jean v. Gonzales, 461 F.3d 87, 90 (1st Cir. 2006).

To demonstrate that he or she is a "refugee," the alien must show that he or she has either suffered past persecution, or has a well-founded fear of future persecution, on account of his or her "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); see also Alibeaj v. Gonzales, 469 F.3d 188, 191 (1st Cir. 2006). If an individual has been "forced to abort a pregnancy or to undergo involuntary sterilization, or . . . has been persecuted for failure

-8-

or refusal to undergo such a procedure or for other resistance to a coercive population control regime," that individual is deemed to have been "persecuted on account of political opinion." 8 U.S.C. § 1101(a)(42). Similarly, an individual who "has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance" is deemed to have "a well founded fear of persecution on account of political opinion." Id.

We are required to uphold the IJ's determinations unless "any reasonable adjudicator would be compelled to conclude to the contrary." Rodriguez-Ramirez v. Ashcroft, 398 F.3d 120, 123 (1st Cir. 2005) (quoting 8 U.S.C. § 1252(b)(4)(B)) (internal quotation marks omitted). We bypass any analysis of the IJ's credibility determination; even if Zheng's testimony is deemed credible, the IJ's denial of asylum is supported by substantial evidence.

Zheng concedes that the past events she described do not support a finding that she suffered past persecution. Cf. 8 U.S.C. § 1101(a)(42); Nelson v. INS, 232 F.3d 258, 263-64 (1st Cir. 2000) (discussing the kind of events that amount to persecution). To prevail, Zheng must therefore show that she has a well-founded fear of future persecution on the basis of a protected ground. That inquiry has both a subjective and an objective component. See Aguilar-Solis v. INS, 168 F.3d 565, 572 (1st Cir. 1999).

Zheng's asylum claim falters on the objective prong. China's country report documents that it is illegal in many areas for single women to bear children. And there may be evidence that some pregnant single women in China are subject to persecution. But Zheng's affidavit explicitly stated her intention to abstain from sex until marriage. The IJ noted that since Zheng is now old enough to get married and have children, it is unclear why she should reasonably fear persecution if she returned to China. Zheng's response on this point was equivocal and she merely ventured that she might be thrown in jail because it was illegal for her to have been smuggled out of the country. This was not a reason why Zheng reasonably feared persecution on the basis of a protected ground -- an issue on which she bore the burden of proof.

The BIA rejected Zheng's attempt to rehabilitate her argument before it. Her brief had asserted that because she opposes China's family planning policies, it is reasonably foreseeable that she will be persecuted for her beliefs. The brief did not cite any evidence in the record supporting this assertion, nor did Zheng otherwise explain why the assertion was true. The BIA's rejection of this theory was reasonable.

In her brief to this court, Zheng supplemented her argument with references to China's country condition reports, and she argues that the IJ specifically erred by failing to consider her claim in light of this evidence. Even assuming dubitante that

Zheng has adequately preserved this argument, it lacks merit. The cited passages merely state that the government sometimes imposes sanctions on individuals who have unauthorized pregnancies, or who assist others in having unauthorized pregnancies. Zheng points us to no record evidence that she faces a reasonable probability of persecution simply because she personally opposes China's family planning policies. Certainly Zheng has pointed to nothing that compels such a conclusion.

The petition for review is denied.