# United States Court of Appeals
## For the First Circuit

No. 06-2155

YUE YUN LIN,

Petitioner,

v.

ALBERTO R. GONZALES,
UNITED STATES ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Torruella and Lipez, <u>Circuit Judges</u>,
and Tashima,[*] <u>Senior Circuit Judge</u>.

<u>Farah Loftus</u> on brief, for petitioner.
<u>Peter D. Keisler</u>, Assistant Attorney General, Civil Division,
with whom <u>Christopher C. Fuller</u>, Senior Litigation Counsel, and <u>Ari
Nazarov</u>, Trial Attorney, Office of Immigration Litigation, Civil
Division, were on brief, for respondent.

September 14, 2007

---

[*]Of the Ninth Circuit, sitting by designation.

**TASHIMA**, <u>**Senior Circuit Judge**</u>. Yue Yun Lin, a native and citizen of China, petitions for review of a Board of Immigration Appeals ("BIA") decision affirming an immigration judge's ("IJ") denial of Lin's application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Lin claims that she was targeted by Chinese authorities on account of her opposition to China's coercive birth control policies, and would face future persecution if she were removed to China. We conclude that substantial evidence supports the BIA's determination that Lin lacked credibility, and therefore we deny Lin's petition for review.

I. Background

Lin was born in China in 1975, and first entered the United States in November 2000. In December 2000, Lin was served with a Notice to Appear, charging her with removability. In November 2001, Lin applied for asylum, withholding of removal and CAT protection.

In her asylum application, Lin described several run-ins with Chinese family planning officials. First, she said that in March 1999 she was falsely accused by family planning officials of living with her boyfriend without being married. According to Lin, she actually lived with her parents at that time. The officials beat Lin's boyfriend and forced Lin to submit to a gynecological exam to check for pregnancy.

Next, in May 1999, the family planning officials in Lin's village began seeking Lin's brother, because he and his wife had a second child in violation of government policy. Officials visited Lin's home three times to question Lin and her parents regarding Lin's brother, in May, June, and July 1999. Lin stated that at the July visit, the officials insisted that her parents pay a 30,000 yuan RMB fine because of their refusal to divulge the whereabouts of Lin's brother's family. As Lin's parents could not afford to pay the fine, the officials decided to arrest the parents. When Lin protested, a struggle ensued. An official struck Lin, then kicked her when she fell to the ground. Lin's parents were held by the authorities for several months.

In reaction to this second incident, Lin said that she decided to protest the officials' acts. Because Lin was not highly literate, she asked someone else to write a statement for her describing what had happened to her family and criticizing the family planning officials. Lin posted the statement around the village, and sent a copy to the local court. Lin was subsequently told that the family planning officials, upset by her public protest, wanted to arrest her. To avoid arrest, Lin left the village and eventually settled in Xiamen, taking a job in a clothing factory there.

Lin described a final encounter with the authorities that occurred in Xiamen later that fall. Lin, however, gave two

-3-

differing versions of the incident in her asylum application and her later testimony in a hearing before the IJ. In Lin's asylum application, she stated that in November 1999, police conducted a check for ID cards among the workers at Lin's factory. Fearing arrest because she was not a resident of Xiamen and thus not legally permitted to work in Xiamen, Lin attempted to flee from the police. During the chase, Lin said that she fell into a deep gully and was knocked unconscious. She woke in a hospital, with severe injuries to her left arm and her face. During the next year, Lin stayed with friends in order to avoid arrest. Eventually, she met an alien smuggler who helped her make her way to the United States by way of Vietnam and Japan.

In her oral testimony before the IJ, speaking through a translator, Lin described the incident in Xiamen that led to her injuries differently. She testified that one day she went out to the grocery store and encountered family planning officials from her home village who were there searching for her to arrest her. She fled into the mountains, and fell, which caused the injuries to her arm and face. Lin's oral description of the events that followed, including her recovery and travel to the United States, remained essentially the same as that given in her asylum application.

After receiving Lin's testimony over the course of

-4-

several hearings,[1] the IJ rejected Lin's application for asylum, withholding of removal, and CAT protection. In a written decision filed in February 2005, the IJ stated that Lin's testimony was not credible, based on discrepancies and vagueness in Lin's account of her experiences.

Specifically, the IJ cited six inconsistencies in Lin's written asylum application and her oral testimony. These discrepancies included: (1) that Lin gave inconsistent dates for her employment in Xiamen; (2) that Lin told two quite distinct versions of the chase by government officials in Xiamen in the application and in her testimony; (3) that Lin listed eight total years of education on her application, but stated at the hearing that she had only five years of schooling; (4) that Lin failed to mention at the hearing that she had traveled through Vietnam and Japan en route to the United States, though her application included this information; (5) that Lin misrepresented her place of residence at an earlier hearing before an IJ in New York; and (6) that Lin gave differing accounts of the family planning officials' three visits to her parents' home in search of her brother.

Based on Lin's lack of credibility, the IJ found that Lin had not established her eligibility for asylum. The IJ also

---

[1] Lin's individual hearing on her asylum application was continued twice, once so that she could apply for a different form of immigration relief and once so that she could secure child care for her infant during the hearing.

concluded that, even if Lin were found credible, Lin had not demonstrated a well-founded fear of future persecution, as she had remained in a state-run hospital for a month following the chase by government officials without incident, and suffered no further problems before she left China a year later. Moreover, Lin's parents and the family of her brother all continued to live in China peaceably. Given that Lin had failed to show her eligibility for asylum, the IJ found that Lin had also failed to show eligibility for withholding of removal or CAT protection.

In a per curiam order, the BIA adopted and affirmed the IJ's decision. The BIA stated that "the discrepancies noted by the Immigration Judge are material and relevant to [Lin's] persecution claim and the Immigration Judge's adverse credibility finding is supported by the record before us." As a result, the BIA concluded that Lin had failed to satisfy her burden of proof as to her claims, and her appeal was dismissed.

II. Standard of Review

Where, as here, "the BIA adopted and affirmed the IJ's ruling, but also discussed some of the bases for the IJ's opinion, we review both the IJ's and BIA's opinions." Zheng v. Gonzales, 475 F.3d 30, 33 (1st Cir. 2007). We review the agency's factual findings, including credibility determinations, under the substantial evidence standard, and may overturn those findings only if "any reasonable adjudicator would be compelled to conclude to

the contrary." 8 U.S.C. § 1252(b)(4)(B); <u>Dhima v. Gonzales</u>, 416 F.3d 92, 95 (1st Cir. 2005). We "give great deference to an IJ's [credibility] determinations so long as the IJ provide[d] specific reasons for those determinations." <u>Id.</u> at 95 (citations and internal quotation marks omitted).

III. Discussion

An asylum applicant bears the burden of establishing her eligibility for asylum. 8 C.F.R. § 1208.13(a). She may do so by demonstrating past persecution or a well-founded fear of future persecution in her home country on the basis of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 1208.13(b). Opposition to a government's coercive birth control policies qualifies as political opinion. <u>Zheng</u>, 475 F.3d at 34 (citing 8 U.S.C. § 1101(a)(42)).

An applicant may establish her eligibility for asylum on the basis of her testimony alone, but if she attempts to do so, an agency finding that she is not credible will usually doom her application. <u>See</u> 8 C.F.R. § 1208.13(a); <u>see also</u> <u>Dhima</u>, 416 F.3d at 95. While we defer to the agency's credibility findings, we adhere to the principle that "an adverse credibility determination cannot rest on trivia but must be based on discrepancies that involved the heart of the asylum claim." <u>Bojorques-Villanueva v. INS</u>, 194 F.3d 14, 16 (1st Cir. 1999) (citation and internal

-7-

quotation marks omitted).[2]  Further, the discrepancies or omissions relied upon by the IJ "must actually be present in the record . . . and . . . a convincing explanation for the discrepancies or omissions must not have been supplied by the alien."  Zheng v. Gonzales, 464 F.3d 60, 63 (1st Cir. 2006) (citation and internal quotation marks omitted).

In this case, substantial evidence supports the IJ's finding that Lin was not credible.  Our primary basis for upholding the IJ's adverse credibility finding is the glaring inconsistency in Lin's two accounts of the incident that led her to leave China, i.e., the alleged chase by authorities that led to Lin's fall and severe injuries to her left arm.

Lin first alleged that she was chased by police after she sought to evade an ID card check at the factory where she worked (an event that would be irrelevant to her claim of persecution on account of her opposition to Chinese birth control policies).  She later claimed that the chase began during a trip to the grocery store, when she encountered family planning officials from her home

_____

[2] The REAL ID Act of 2005 added a provision to the asylum statute stating that inconsistencies, inaccuracies, and falsehoods in the asylum applicant's statements may support an adverse credibility finding "without regard to whether [the] inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim . . . ."  REAL ID Act of 2005, Pub. L. No. 109-13, § 101(a)(3), 119 Stat. 231, 303 (codified at 8 U.S.C. § 1158(b)(1)(B)(iii)). However, Lin's asylum application was filed well before the Act's effective date and thus should be adjudicated under the standards of prior law.  See In re S-B, 24 I. & N. Dec. 42, 45 (BIA 2006).

village and fled to avoid arrest. These accounts are fundamentally inconsistent, and the inconsistency undermines the core basis for Lin's claimed fear of persecution, which was Lin's allegation that family planning officials from her village actively sought her arrest following Lin's public opposition to the officials' coercive practices. Lin has never explained why she told two such different versions of this incident in Xiamen.

Moreover, the record also supports the IJ's description of the other inconsistencies and omissions in Lin's accounts of her experiences. While these additional discrepancies do not necessarily go to the heart of Lin's persecution claim, and thus might not be enough standing alone to support an adverse credibility finding, see Bojorques-Villanueva, 194 F.3d at 16, in this case they provide further support for the IJ's conclusion that Lin was not candid in her recitation of events. Thus, we conclude that the record supports the IJ's finding that Lin was not truthful.

Given Lin's lack of credibility in describing the basis for her alleged fear of future persecution, Lin has failed to demonstrate that she is eligible for asylum. See 8 C.F.R. § 1208.13(a). For the same reason, Lin has also failed to establish her eligibility for withholding of removal or CAT protection, as she has not demonstrated that she is likely to suffer threats to her life or freedom, or face torture if removed to China. See 8

U.S.C. § 1231(b)(3) (withholding of removal required where alien's life or freedom would be threatened on account of a protected ground if removed); 8 C.F.R. § 1208.16 (c)(2) (CAT protection accorded where alien would more likely than not be tortured if removed). Consequently, we affirm the BIA's order.

**The petition for review is denied.**