# United States Court of Appeals
## For the First Circuit

No. 08-1478

JOLANTA BURBIENE, et al.,

Petitioners,

v.

ERIC H. HOLDER, Jr., Attorney General,[*]

Respondent.

ON PETITION FOR REVIEW OF AND ORDER OF THE

BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Selya and Lipez, Circuit Judges.

Glenn T. Terk for petitioner.
Manuel A. Palau, Trial Attorney, Office of Immigration Litigation, with whom Gregory G. Katsas, Assistant Attorney General, Terri J. Scadron, Assistant Director, and Kathryn L. Deangelis, Trial Attorney, Office of Immigration Litigation, were on brief, for respondent.

June 1, 2009

---

[*]Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Eric. H. Holder, Jr. has been substituted for former Attorney General Michael B. Mukasey as respondent.

**LIPEZ, <u>Circuit Judge</u>**.  Petitioner Jolanta Burbiene seeks review of a decision of the Board of Immigration Appeals ("BIA") denying her application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT").  Burbiene ("petitioner") filed an application for asylum on behalf of herself and her daughter, Agniete Burbaite ("Agniete").  The petition identified Arvydas Burba ("Arvydas"), as her husband.  Petitioner and her family are citizens of Lithuania, and petitioner claimed eligibility for asylum based on her fear that she or her daughter could fall victim to human trafficking in the sex trade if they returned to Lithuania.

The BIA rejected petitioner's claim on the ground that she had failed to meet her burden of proving a well-founded fear of future persecution in Lithuania.  There was no attempt to establish past persecution.  Affirming the decision of an Immigration Judge ("IJ"), the BIA concluded that petitioner failed to establish that the risk of being forced into prostitution in Lithuania results from either government action, government-supported action, or private conduct that the government is unwilling or unable to control.  The BIA also found that the petitioner failed to establish membership in a particular social group for purposes of asylum and withholding of removal.

After review of the record, we deny the petition.

## I.

Petitioner and her family entered the United States on August 20, 2001 on a tourist visa that gave them permission to remain until February 19, 2002. On August 14, 2002, petitioner filed an application for asylum which listed Arvydas as her spouse and Agniete, their daughter, as a derivative beneficiary.[1] As a basis for the asylum claim, petitioner cited fear that she or Agniete would be abducted and forced into prostitution if they returned to Lithuania. She submitted documentation to support her application, including Country Reports on Lithuania issued by the United States Department of State.

On May 7, 2004 the family members were each served with Notices To Appear in Immigration Court and charged with removeability because they had remained in the United States longer than permitted, in violation of section 237(a)(1)(b) of the Immigration and Nationality Act ("INA"). See 8 U.S.C. § 1227(a)(1)(B). They conceded removeability, but petitioner renewed her application for asylum for herself and for her daughter.

---

[1] Petitioner only checked the box requesting the family member "be included in this application" for Agniete, and not for Arvydas. See 8 U.S.C. § 1158(b)(3)(A) ("A spouse or child . . . of an alien who is granted asylum under this subsection may, if not otherwise eligible for asylum under this section, be granted the same status as the alien if accompanying, or following to join, such alien."). The IJ and BIA appear to have considered the application as if it included the entire family, although the record provides no indication that the application was ever amended to include Arvydas. We will also refer to the application as applying to the whole family.

On June 2, 2006, an IJ conducted a hearing on the merits of petitioner's application. Petitioner testified that shortly after the family arrived in the United States in 2001, they learned that Tovilla, a friend of Agniete, had been kidnaped in Lithuania and almost sold into prostitution. After the kidnaping, Tovilla's parents had asked the Lithuanian police and the media for help. Tovilla was found five days later near the Polish border and returned to her family.[2] Petitioner also testified that in 1998 her cousin, Inga, had been kidnaped and forced into prostitution after responding to an advertisement requesting childcare providers to work in Germany. She was later arrested in a German prostitution raid and returned to Lithuania. According to petitioner, Inga did not report her experience to the police because she was ashamed and because "even if she went to the police, they certainly wouldn't have . . . looked for [the man responsible], let alone arrest him." Petitioner testified that Inga had refused to write a letter to support her asylum application because she was ashamed, and that Tovilla's mother also declined to write such a letter.

The IJ denied petitioner's application for asylum. Although the judge found petitioner credible, he determined that she is ineligible for asylum because human trafficking in Lithuania

_____

[2] According to petitioner's testimony, "a certain woman" found Tovilla. It is unclear who this woman is or whether she was affiliated with the government or any other group.

is not the result of government action, government-supported action, or the government's unwillingness or inability to control private conduct, and therefore does not amount to persecution under the INA.  The judge disagreed with her claim that Lithuanian police are unwilling to help trafficking victims, finding it unsupported by the country reports submitted in support of her application for asylum.

The IJ also found that petitioner failed to meet her burden of establishing that the feared persecution would be on account of "membership in a particular social group."  8 U.S.C. § 1158(b)(1)(B)(i).  The IJ noted that petitioner "considers herself rather to be beyond the age of kidnaping and forced prostitution, but she considers her daughter to be a prime subject."[3]  The judge

_____

[3] Petitioner does not concede in her brief that she is not part of the "particular social group" that she claims is persecuted. However, to the extent she seeks to claim asylum for herself on the basis of fear that her daughter will be persecuted, it is not clear whether such a claim is viable.  See, e.g., Kechichian v. Mukasey, 535 F.3d 15, 22 (1st Cir. 2008) ("This circuit has not considered a parent's claim of psychological harm based solely on a child's potential persecution, but the BIA has foreclosed such claims."); Tchoukhrova v. Gonzales, 430 F.3d 1222, 1223 (9th. Cir. 2005)(Kozinski, J., dissenting from denial of rehearing en banc) ("By allowing the harms suffered by a child to be imputed to the parent, the panel in effect creates a reverse derivative asylum claim -- something expressly barred by 8 C.F.R. § 207.7(b)(6), which provides that '[t]he following relatives of refugees are ineligible for accompanying or following-to-join benefits . . . [a] parent, sister, brother . . . .'").  But see Tchoukhrova v. Gonzales, 404 F.3d 1181, 1190 (9th Cir. 2005) (holding that harms suffered by a child may be imputed to parents who seek asylum), vacated and remanded, 549 U.S. 2006.  The parties have not fully briefed this important question, which we need not reach because of our conclusion that petitioner cannot establish a well-founded fear

-5-

found that the alleged social group, which he described as "women and children in Lithuania who are under 40 years of age, and who fear being kidnaped by criminals," was not a recognizable social group for purposes of the INA as the statute has been interpreted by the BIA. See In re Acosta, 19 I. & N. Dec. 211, 214 (BIA 1985); In re C-A-, 23 I. & N. Dec. 951, 955 (BIA 2006).

On March 18, 2008, the BIA affirmed the IJ's decision and dismissed the appeal, agreeing that petitioner failed to meet her burden of establishing a well-founded fear of persecution on account of membership in a particular social group. The BIA endorsed the IJ's finding that respondents feared criminal, not governmental, activity. It noted that while human trafficking in Lithuania is undoubtedly a "serious concern," the IJ's conclusion that it does not amount to persecution on the basis of a statutorily protected ground "properly reflects our immigration laws." The BIA added that petitioner did not establish membership in a particular social group for purposes of asylum and withholding of removal, citing the Sixth Circuit's decision in Rreshpja v. Gonzales, 420 F.3d 551, 556 (6th Cir. 2005), which held that young, attractive Albanian women who fear being kidnaped and forced into prostitution do not constitute a particular social group for asylum purposes. See id. ("A social group may not be circularly defined

_____

of future persecution resulting from government action or inaction for any member of the family.

by the fact that it suffers persecution.  The individuals in the group must share a narrowing characteristic other than their risk of being persecuted.").  Burbiene petitioned for review of the BIA order.

## II.

To qualify for asylum on the basis of a well-founded fear of future persecution, an applicant must prove that she has a well-founded fear that if she returns to her home country she will be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion.  8 U.S.C. §§ 1101 (a)(42)(A), 1158(b)(1)(B)(i).  Her fear must be both subjectively real and objectively reasonable.  Silva v. Ashcroft, 394 F.3d 1, 4 (1st Cir. 2005).  "Where, as here, 'the BIA adopted and affirmed the IJ's ruling, but also discussed some of the bases for the IJ's opinion, we review both the IJ's and BIA's opinions.'"  Lin v. Gonzales, 503 F.3d 4, 6-7 (1st Cir. 2007) (quoting Zheng v. Gonzales, 475 F.3d 30, 33 (1st Cir. 2007)).  We apply the highly deferential substantial evidence standard to the agency's factual determinations, considering "whether the agency's ruling is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  Wang v. Mukasey, 508 F.3d 80, 83-84 (1st Cir. 2007) (internal quotation marks and citation omitted).  We review the BIA's legal determinations de novo, id. at 83,

although we give some deference to its interpretations of the INA, Silva, 394 F.3d at 5.

Under the INA, persecution "always implies some connection to governmental action or inaction, related to a protected ground." Orelien v. Gonzales, 467 F.3d 67, 72 (1st Cir. 2006). A petitioner bears the burden of establishing this necessary link between persecution and government action or inaction. See id. at 70. Country Reports for Lithuania, and petitioner's own concessions in her brief, support the agency's conclusion that human trafficking in Lithuania is committed by a criminal element. Such criminal activity could only amount to persecution under the INA if petitioner can show that either: 1) it is committed by people aligned with the government, or 2) the government is unwilling or unable to control it. See Raza v. Gonzales, 484 F.3d 125, 129 (1st Cir. 2007). Here, only the second prong is at issue, because petitioner does not argue that the government is aligned with the kidnapers. Scattered incidences of violence or harassment are not enough to establish that a government is unwilling or unable to control violence; "[b]y definition, persecution has a systematic aspect." Id.

Although petitioner argues that Lithuania is unable or unwilling to control the problem of human trafficking, "reasonable, substantial, and probative evidence" supports the IJ's conclusion that Lithuania is "making every effort to combat" human

-8-

trafficking, "a difficult task not only for the government of Lithuania, but for any government in the world."  The Country Report for 2005 mentions legislative changes enacted that year to strengthen the government's response to trafficking, such as increased criminal sentences for traffickers.  It also reports that in 2005 a joint government task force uncovered an organized crime ring that had transported nearly 100 young girls and women to work in the sex trade in England, and that during that year the government opened 24 criminal cases against alleged traffickers. Furthermore, according to the report, the government provided funding for fifteen "day centers" to assist victims of trafficking and gave grants to thirteen non-governmental organizations that similarly serve trafficking victims.

It is true that Lithuania has not been able to completely eradicate the problem of human trafficking within its borders, and that the problem persists despite what the Country Report described as "significant efforts" by the government.  Nonetheless, the record does not indicate that Lithuania's inability to stop the problem is distinguishable from any other government's struggles to combat a criminal element.  Lithuania has experienced both setbacks and successes in its fight against this crime.[4]  But these

_____

[4] At oral argument, there was disagreement over the number of women actually trafficked in Lithuania each year.  The IJ observed that Lithuanian police "determined that nine women, including one minor, were victims of human trafficking" in 2005.  Petitioner noted the inconsistency between that determination and the Country

circumstances do not subject the victims of human trafficking to "persecution" under the INA.

Because the facts do not establish a nexus between the petitioner's fear of harm and the government of Lithuania, substantial evidence supports the BIA's conclusion that petitioner failed to establish the well-founded fear of persecution required for asylum. As this is an independent ground to reject her petition, we do not reach the question of whether she established "membership in a particular social group" to qualify as a refugee under the INA.

We therefore reject the petition for review of the asylum claim. Consequently, we also reject the petition to review the claim for withholding of removal, which has a more demanding standard of proof and obligates a petitioner to show a "clear probability of persecution" if returned to her home country. I.N.S. v. Stevic, 467 U.S. 407, 413 (1984). We likewise dismiss the petition for review of the CAT claim. See Santosa, 528 F.3d, 88, 92 n.1 (1st Cir. 2008) ("The standard for withholding of removal is more stringent than that for asylum. The CAT standard,

---

Report's statement that the Lithuanian government estimated that 1,000 to 1,500 women were trafficked, presumably also in 2005. We note that the IJ's chosen figure was also taken from the same Country Report, and that it was petitioner herself who submitted, by way of the Country Report, the figure chosen by the IJ. Either way, substantial evidence supports the IJ's conclusion that the Lithuanian government was neither responsible for the trafficking nor unable or unwilling to control it to an extent that would constitute "persecution" under the INA.

-10-

in turn, is more stringent than that for withholding of removal." (citations omitted).  Protection under the CAT requires an alien to show "that it is more likely than not that he or she would be tortured," 8 C.F.R. § 208.16(c)(2), "by or at the instigation of or with the consent or acquiescence of a public official," id. § 208.18(a)(1).[5]  As we have stated, there is no evidence of government consent or acquiescence in the human trafficking problem in Lithuania.

The petition for review is denied.

---

[5] Because we do not grant withholding of removal or relief under CAT to the petitioner, it is not necessary for us to consider whether a derivative benefit could apply to her family on those claims, an issue not raised by either party. We have previously noted that there can be no derivative beneficiaries of a grant of withholding of removal. Kechichian, 535 F.3d at 22 n.4 (noting that the withholding of removal statute "does not permit derivative withholding of removal under any circumstances." (internal quotation marks and citation omitted)).  The Eleventh Circuit has held that "there are no derivative benefits associated with a grant of withholding of removal because, unlike the asylum statute, the withholding statute contains no mention of derivative rights.  The CAT regulation likewise contains no mention of derivative rights; it limits the applicant and seemingly forecloses a derivative claim."  Martinez v. U.S. Att'y Gen., No. 08-14398, 2009 WL 1109294, at *3 (11th Cir. 2009); see also Delgado v. U.S. Att'y Gen., 487 F.3d 855, 862 (11th Cir. 2007) ("[T]here are no derivative benefits associated with a grant of withholding of removal.")