**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 08-2196

GENTIAN MUSKA,

Petitioner,

v.

ERIC H. HOLDER, JR.,[*] ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Selya and Howard, Circuit Judges

Jose A. Espinosa on brief for the petitioner.
Imran R. Zaidi, Attorney, Office of Immigration Litigation,
Tony West, Assistant Attorney General, Civil Division, and Stephen
J. Flynn, Assistant Director, Office of Immigration Litigation, on
brief for respondent.

August 7, 2009

---

[*]    Pursuant to Fed. R. App. P. 43(c)(2), Attorney General
Eric H. Holder, Jr. has been substituted for former Attorney
General Michael B. Mukasey as the respondent.

**LYNCH**, **Chief Judge**.  Gentian Muska, a native and citizen of Albania, petitions for review of an August 13, 2008 decision by the Board of Immigration Appeals ("BIA") adopting the findings of the Immigration Judge ("IJ") and issuing a final order of removal. We deny his petition in part and dismiss it in part.

I.

Gentian Muska arrived in the United States on October 16, 1999 with a valid B-2 visa obtained from the United States Embassy in Greece.  As of April 16, 2000, he overstayed his visa.  Over a year later, on July 23, 2001, Muska filed an application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") with the Immigration and Naturalization Service ("INS").  INS did not grant this application and Muska was referred to an Immigration Court for removal proceedings where, on April 24, 2002, he conceded removability but also renewed his application for asylum, withholding of removal, and protection under the CAT.  He filed a new application with the Immigration Court on June 16, 2005.

At the March 3, 2006 hearing on the merits of his claims, Muska withdrew his asylum application because it was untimely, but presented evidence to support his other claims.  After reviewing the evidence, the IJ denied the claims.

The IJ found Muska "not credible with regard to key elements of his claim."  Even assuming credibility, the IJ found

-2-

that Muska had not met his burden to receive withholding of removal by showing past persecution by the government or individuals or organizations controlled by the government. Specifically, the IJ concluded that a 1997 attack by unidentified persons on Muska's family home, which caused him and his family to flee the country, and a 1999 fight Muska participated in at a café while on a brief visit to Albania from Greece, purportedly instigated by Socialists because of his political affiliation with Albania's Democratic Party, did not constitute persecution. The IJ also concluded that Muska's account of the 1999 café incident as well as his testimony that he was sure he would be persecuted by unidentified groups was insufficient to establish a well-founded fear of future persecution. In doing so, the IJ took notice of a 2004 State Department report describing a more stable political environment in Albania and reporting that the Democratic Party at that time controlled the executive branch of the Albanian government. The IJ also rejected Muska's CAT claim, noting that "[t]here is no evidence in the record of proceedings nor any presented at the hearing on the merits to suggest that the respondent has any reason to fear torture." Finally, the IJ rejected an application for voluntary departure because Muska expressed a reluctance to leave the country, even if ordered to do so.

On September 29, 2006, Muska filed a notice of appeal with the BIA. In an opinion dated August 13, 2008, the BIA affirmed

the IJ's decision. The BIA found no clear error in the IJ's finding that Muska was not credible, and noted that Muska's brief failed to address the specific inconsistencies identified by the IJ. The BIA also agreed with the IJ's alternate conclusion that even if credible, Muska could not receive withholding of removal because he failed to establish either past persecution or a clear probability of future persecution by the Albanian government. It noted that Muska had failed to cite any legal authority that might suggest that the 1997 and 1999 incidents were sufficient evidence to meet his burden, and that the brief did not address the IJ's findings with regard to changes in the Albanian government after 1997. The BIA rejected Muska's claim for relief under the CAT and request for voluntary departure, because his brief presented no substantive arguments on either issue.

Muska filed a petition for review with this court.

II.

Where, as here, the BIA adopts or defers to the Immigration Court's findings and also discusses some of the underlying bases for the decision, we review the decisions of both the BIA and the IJ. Zheng v. Gonzales, 475 F.3d 30, 33 (1st Cir. 2007).

We review agency findings of fact under the deferential "substantial evidence" standard. Sinurat v. Mukasey, 537 F.3d 59, 61 (1st Cir. 2008). This standard requires that we treat

-4-

administrative findings of fact as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). To revise the agency's findings, "we must be persuaded that 'the evidence not only supports that conclusion, but compels it.'" Khem v. Ashcroft, 342 F.3d 51, 53 (1st Cir. 2003) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 n.1 (1992)).

A.        Withholding of Removal

The BIA's denial of withholding of removal is supported by record evidence both that Muska's testimony was not credible and that, even if the testimony were deemed credible, it failed to meet the burden for withholding of removal. These two independent bases lead to denial of the petition as to the withholding claim.

In his petition before this court, Muska has not briefed the credibility issue and so any challenge to the IJ's findings is waived. Tower v. Leslie-Brown, 326 F.3d 290, 299 (1st Cir. 2003). That alone would require us to deny the petition. But we go on to affirm the BIA's alternate holding.

In order to obtain withholding of removal under 8 U.S.C. § 1231(b)(3), the applicant has the burden of proving that "his or her life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 1208.16(b). To meet this standard, an applicant must show that it "is more likely than not" that he or she would suffer persecution

if removed.  8 C.F.R. § 1208.16(b)(2); De Oliveira v. Mukasey, 520 F.3d 78, 79 (1st Cir. 2008).  However, an applicant is also entitled to a rebuttable presumption of future persecution if he or she can demonstrate past persecution on protected grounds.  8 C.F.R. § 1208.16(b)(1); Orelien v. Gonzales, 467 F.3d 67, 71 (1st Cir. 2006).

Muska's argument that he has experienced past persecution was based on the 1997 attack on his home and the 1999 café incident. Testifying about the 1997 attack before the IJ, Muska suggested that the attack was retribution for a decision by his father, at that time a colonel in the Albanian military, to disobey orders to fire on "innocent people."  Yet as the IJ and BIA noted, Muska could not identify the culprits, he provided only vague suggestions of their possible motives, and in any case, the events occurred during a time of general unrest.

Regarding the 1999 café fight, Muska also provided vague details as to the identity of his attackers and their motives for attacking him.  He described them as "Socialist people" and said that they approached him because they knew his father and that Muska was a member of the Democratic Party.  This evidence does not compel the conclusion that these two incidents either together or in isolation amounted to persecution.

The record also does not compel a finding that Muska would more likely than not experience persecution if he returned to

Albania. The 1999 café incident does not by itself compel the conclusion that he would suffer persecution if he remained in the country. Muska also testified that if he returned home he was sure that he would be persecuted for his membership in the Democratic Party and for his father's role as a colonel in the military. Yet he could not explain who would be doing this and why. When asked why he felt he would still be unsafe, given that the Democratic Party at the time of the hearing controlled the Executive branch of the Albanian government, Muska responded that the local governments were still controlled by the Socialists, but did not explain why they posed a danger. Given the limited nature of Muska's evidence and the fact that the 2004 State Department report stated that the political situation had stabilized in Albania, substantial evidence supported the IJ's finding that Muska did not more likely than not face persecution if removed. Since Muska did not address the evidence regarding changes in the Albanian government in his appeal to the BIA, its decision was also supported by substantial evidence.

B.        CAT and Voluntary Departure Claims

Muska's claims for CAT relief and voluntary departure were not substantially argued to the BIA. Because he has failed to exhaust his administrative remedies we do not have jurisdiction to hear these claims. Silva v. Gonzales, 463 F.3d 68, 72 (1st Cir. 2006).

III.

We have dealt with the merits of the case, but we wish to note that petitioner's brief was inadequate and we could have decided the case on the basis of abandonment or waiver. The brief contained only a page and a half of discussion and presented Muska's claims unclearly. Counsel is warned that this is unacceptable.

For the foregoing reasons, the petition is <u>denied</u> in part and <u>dismissed</u> in part.