**Tian Ming LIN, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Attorney General Alberto R. Gonzales,[1] Respondents.**

**Docket No. 06–2356–AG.**

United States Court of Appeals, Second Circuit.

Submitted and Decided: Oct. 30, 2006.

Rehearing Granted: Jan. 5, 2007.

---

1. We direct the clerk to alter the official caption to reflect the fact that there are two respondents in this case.

Yee Ling Poon, Robert Duk–Hwan Kim, Law Offices of Yee Ling Poon, New York, NY, for petitioner.

Alison R. Drucker, Senior Litigation Counsel (Peter D. Keisler, Assistant Attorney General Civil Division; Donald E. Keener, Deputy Director, on the brief), Office of Immigration Litigation, United States Department of Justice, Washington, DC, for respondents.

Before: POOLER, SOTOMAYOR and KATZMANN, Circuit Judges.

PER CURIAM:

Tian Ming Lin, a citizen of the People's Republic of China, recently petitioned for review of an April 20, 2006 order of the Board of Immigration Appeals ("BIA") denying his motion to reopen removal proceedings on the basis of changed personal circumstances. *In re Tian Ming Lin,* No. A 79 084 460 (B.I.A. Apr. 20, 2006). Lin also moved in this Court to remand his case to the BIA to consider previously unavailable evidence suggesting that forced sterilization is part of the official family-planning policy in Fujian Province, China, and that this policy is applied to the repatriated parents of foreign-born children. Lin, the father of two United States-born children, contended that this new evidence established that he would face forced sterilization if returned to Fujian Province. We granted Lin's motion to remand. *See Tian Ming Lin v. U.S. Dep't of Justice,* 468 F.3d 167 (2d Cir.2006) (per curiam). We now grant the government's petition for rehearing and revisit the basis for our earlier decision. Because, as the government correctly observes, there is no procedure by which a petitioner can make a motion in the court of appeals to remand a case for consideration of new evidence, we deny Lin's motion to remand. Nonetheless, given the gravity of Lin's claim of future persecution and the potentially far-reaching implications for similarly situated petitioners if the new evidence Lin presents is authentic, we remand this case to the BIA. Although the government concurs in our decision to remand, it asserts

that we have authority to remand only when it requests that we do so. It also can be argued, however, that it would be within our inherent equitable power to remand Lin's claim of future persecution in light of the new evidence. Without choosing between these grounds, we remand this case to the BIA for further proceedings consistent with this opinion.

## BACKGROUND

Lin entered the United States on November 30, 2000, and shortly thereafter was detained by immigration authorities. He applied for asylum, withholding of removal and relief under the Convention Against Torture ("CAT"),[2] claiming past persecution on the basis of his mother's forcible sterilization and fear of future persecution on the basis of, among other things, the possibility that he would be subjected to forcible sterilization himself if he returned to his home in Fujian Province, China. On February 25, 2002, Immigration Judge ("IJ") John Opaciuch denied Lin's application. The IJ concluded that Lin could not claim refugee status on the basis of his mother's past persecution and that he had failed to carry his burden of proof regarding his claim of future persecution, given that a State Department report on China stated that forcible sterilization is uncommon and does not "continue to systematically occur." The IJ therefore rejected Lin's claims for asylum and withholding of removal. He also rejected Lin's claim under the CAT for lack of corroboration. On August 29, 2003, the BIA affirmed the IJ's decision without opinion. Because of a BIA processing error, Lin did not receive the BIA's order, and the BIA reissued the order on March 28, 2005, treating it as having been entered on this later date. Lin initially sought judicial review of the BIA's order in this Court, but ultimately declined to pursue his appeal.

On January 31, 2006, Lin filed a motion to reopen with the BIA on the basis of his marriage to another Chinese citizen after the BIA's order. He stated that he and his wife had one child, she was pregnant with a second, and he would take his family with him to China if he were removed from the United States. He contended that although he and his wife had been living outside China, they would be subject to China's one-child policy upon their return, and that, as a result, his wife would be forced to abort her pregnancy or one or the other of them would be forcibly sterilized. In support of these contentions, Lin submitted a number of exhibits discussing China's family-planning policies, including an affidavit from John Shields Aird (the "Aird Affidavit"), a retired government demographer and China scholar, which included Aird's conclusion that China's family-planning policy requires forcible sterilization of parents of two or more children.

The BIA denied Lin's motion to reopen on April 20, 2006, citing its decision in *In re C–C–*, 23 I. & N. Dec. 899, 2006 WL 805042 (B.I.A.2006), in which it held that a Chinese parent of two children could not establish prima facie eligibility for asylum, for purposes of a motion to reopen, on the basis of the Aird Affidavit. *Id.* at 901–04. In Lin's case, the BIA concluded that none of the evidence he submitted with his motion to reopen "demonstrates that citizens with two United States-born children who return to China will be forced to undergo sterilization." It therefore found that, like the petitioner in *In re C–C–*, Lin had failed

---

**2.** United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *opened for signature* Dec. 10, 1984, S. Treaty Doc. No. 100–20 (1988), 1465 U.N.T.S. 85.

to establish prima facie eligibility, and it denied his motion to reopen.

Lin sought review of the BIA's order in this Court. He also moved to remand his case to the BIA, citing our recent decision in *Shou Yung Guo v. Gonzales,* 463 F.3d 109 (2d Cir.2006), in which we discussed documents that may constitute evidence of an official policy of forcible sterilization in Fujian Province. *Id.* at 112–13. We granted Lin's motion in a brief opinion. *See Tian Ming Lin,* 468 F.3d at 169. We explained that "[b]ecause the *Shou Yung Guo* documents are too important to ignore, we remand this case to the BIA so that it may determine whether they establish the existence of an official policy, in Changle City or Fujian Province generally, of forced sterilization of parents of two or more children, including parents whose children were born abroad, and so that the BIA may reassess, in light of these documents, Lin's claim that he risks forced sterilization if returned to his home province in China." *Id.* The government now petitions for rehearing, concurring in our decision to remand but claiming that we lacked authority to remand on Lin's motion.

### DISCUSSION

Lin is correct that the documents recently presented to this Court for the first time in *Shou Yung Guo* suggest that there may in fact be an official policy of forced sterilization in Fujian Province, or at least in its city of Changle. *Shou Yung Guo* discussed documents reflecting 2003 decisions of the Changle City Family–Planning Administration and the Fujian Province Department of Family–Planning Administration, both indicating that parents of children born abroad are subject to the same family-planning policies as parents of native-born children, as well as a 1999 document entitled "Q & A for Changle City Family–Planning Information Handbook" issued by Changle City family-planning authorities, which states that forced sterilization is mandated for parents of two or more children. 463 F.3d at 112–13. Unlike the documents presented with Lin's motion to reopen, the *Shou Yung Guo* documents, if authentic, appear to be official statements that the family-planning policy in Changle City, or Fujian Province generally, requires forcible sterilization of parents of two or more children and that this policy applies to parents whose children were born abroad. These documents potentially undermine our continued reliance, and the BIA's, on the State Department reports, which may have been prepared without the benefit of these documents. In *Shou Yung Guo,* we remanded for the BIA to reconsider the petitioner's claim in light of these documents. *Id.* at 115.

In its petition for rehearing, the government argues that we may not take judicial notice of the *Shou Yung Guo* documents in adjudicating Lin's petition for review and motion to remand. Yet notwithstanding the statutory injunction to "decide the petition [for review] only on the administrative record on which the order of removal is based," 8 U.S.C. § 1252(b)(4)(A), we have previously taken judicial notice of facts outside the record, particularly regarding country conditions. *See Hoxhallari v. Gonzales,* 468 F.3d 179, 186 n. 5 (2d Cir.2006) (per curiam) ("Of course, we may always exercise independent discretion to take judicial notice of any further changes in a country's politics that occurred between the time of the BIA's determination decision [sic] and our review."); *see also Latifi v. Gonzales,* 430 F.3d 103, 106 n. 1 (2d Cir.2005) (per curiam) ("[W]e take judicial notice of the fact that the Democratic Party returned to power in Albania through general elections in July.").

Moreover, were we to take judicial notice of the *Shou Yung Guo* documents, we would not be taking judicial notice of an official policy of forcible sterilization in Fujian Province, the existence of which clearly is not a fact "not subject to reasonable dispute" as required for taking judicial notice. Fed.R.Evid. 201(b). Rather, we would be taking notice only that another panel of our Court remanded a case to the BIA for reconsideration of previously unexamined evidence that, in the opinion of that panel, "apparently reflects governmental policy in the province in China where [the petitioner] lived," and which the government conceded appeared to support the petitioner's assertion of changed country conditions. *Shou Yung Guo*, 463 F.3d at 115. Nor would this be the first time a panel of this Court has taken notice of facts identified in the decisions of other panels. *See Gjolaj v. Bureau of Citizenship and Immigration Servs.*, 468 F.3d 140, 143 n. 2 (2d Cir.2006) (relying on *Hoxhallari* for the proposition that "there has been a fundamental change in the political structure and government of Albania, beginning in 1990"). We believe that taking notice of the *Shou Yung Guo* documents would be justified given our prior precedent. We need not decide this question, however, because, as we will explain, although we have no statutory authority to grant Lin's motion to remand, we do have authority to remand this case to the BIA without reaching the merits of Lin's claim.

■ Although we agree with Lin that the *Shou Yung Guo* documents require the BIA's consideration, the government is correct that even were we to take notice of them, there is no statutory mechanism by which a party may move this Court to remand to the BIA. Prior to the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, Div. C, 110 Stat. 3009 ("IIRI-

RA"), we had the authority to remand cases to the BIA under 28 U.S.C. § 2347(c). *See Osaghae v. U.S. INS*, 942 F.2d 1160, 1162 (7th Cir.1991). This provision permits a party to seek "leave to adduce additional evidence" from the court of appeals in a proceeding reviewing an administrative agency decision, if that evidence is material and reasonably unavailable previously. 28 U.S.C. § 2347(c). It also permits a court of appeals to "order the additional evidence and any counterevidence the opposite party desires to offer to be taken by the agency." *Id.* After IIRIRA, however, the statutory provision governing the scope of our review of BIA decisions does not permit us to order the BIA to hear additional evidence pursuant to § 2347(c). *See* 8 U.S.C. § 1252(a) (providing that a court reviewing a final order of removal "may not order the taking of additional evidence under section 2347(c) of Title 28"). Thus, we deny Lin's motion to remand.

Nonetheless, we believe that we possess the inherent equitable power to remand cases to administrative agencies for further proceedings in sufficiently compelling circumstances. As the Supreme Court has stated regarding the federal courts' power to remand proceedings to the National Labor Relations Board:

It is familiar appellate practice to remand causes for further proceedings without deciding the merits, where justice demands that course in order that some defect in the record may be supplied.... The jurisdiction to review the orders of the Labor Relations Board is vested in a court with equity powers, and while the court must act within the bounds of the statute and without intruding upon the administrative province, it may adjust its relief to the exigencies of the case in accordance with the equitable principles governing judicial action.

*Ford Motor Co. v. NLRB,* 305 U.S. 364, 373, 59 S.Ct. 301, 83 L.Ed. 221 (1939); *see Becerra–Jimenez v. INS,* 829 F.2d 996, 1001–02 (10th Cir.1987) (citing *Ford Motor Co.* for the proposition that "a reviewing court has the inherent power to remand causes to administrative agencies for further proceedings to permit further evidence to be taken or additional findings to be made on essential points"); *see also Greater Boston Television Corp. v. FCC,* 463 F.2d 268, 283 n. 26 (D.C.Cir.1971) (Leventhal, J.) (noting that the Supreme Court in *Ford Motor Co.* held that a limited remand was appropriate *"notwithstanding the absence of express statutory provision* for [such] a remand" (emphasis added)). We have exercised this power in the immigration context to order a limited remand to the BIA so that a petitioner could file a motion to reopen where a long delay between the IJ's decision and the BIA's review caused us to question whether country conditions had changed in the interim. *See Qun Yang v. McElroy,* 277 F.3d 158, 162–64 (2d Cir.2002) (per curiam).

We do not necessarily construe Congress's decision to deprive parties of the § 2347(c) mechanism as indication that Congress also intended to take away our inherent power to remand. If Congress had intended to prohibit us from remanding for consideration of new evidence in all instances, it could have done so much more clearly. Instead, IIRIRA by its terms foreclosed only the use of the § 2347(c) procedural mechanism under which we could remand on motion of a party. As we have recently stated, "we do not lightly assume that Congress has intended to depart from established principles such as the scope of a court's inherent power." *Armstrong v. Guccione,* 470 F.3d 89, 102 (2d Cir.2006) (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 47, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)). Rather, before we

will conclude that Congress intended to deprive us of our inherent powers, we require "something akin to a clear indication of legislative intent." *Id.* Moreover, when Congress establishes a procedure to limit or cabin our power to take an action in one context that we previously could perform in the exercise of our inherent powers, we do not presume that Congress intended to eliminate our inherent power to accomplish that result. *See Chambers,* 501 U.S. at 50, 111 S.Ct. 2123 ("[N]either is a federal court forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under [a] statute or the Rules [of Civil Procedure]."); *Armstrong,* 470 F.3d at 102 ("[I]t is possible for statutory and inherent sources of judicial authority to coexist."). However, we do not resolve the question of Congress's intent in enacting § 2347(c).

Those of our sister Circuits to consider the issue have concluded, correctly, that after IIRIRA we no longer possess statutory authority to grant a motion to remand. Yet although some of our sister Circuits' decisions, several of which the government cites in its petition for rehearing, are thoughtful and well-reasoned on the question of our authority under § 2347(c) after IIRIRA, they appear to have assumed that § 2347(c) is the only possible source of authority without considering the inherent authority argument we note here. *See Al Najjar v. Ashcroft,* 257 F.3d 1262, 1281 (11th Cir.2001) ("We interpret IIRIRA['s transitional rule] as eliminating our authority under § 2347(c) to remand to the BIA so that an alien can present 'additional evidence.' ... This means that, in transitional cases, IIRIRA prohibits us from ordering the BIA to consider evidence that is offered for the first time on appeal ...."); *see also Gebremaria v. Ashcroft,* 378 F.3d 734, 737

(8th Cir.2004) ("We, as did the court in *Najjar*, interpret IIRIRA['s transitional rule] as eliminating our authority under § 2347(c) to remand to the Board so that an alien can present 'additional evidence.' ... As such, IIRIRA['s transitional rule] is a jurisdictional bar that precludes our consideration of non-record evidence submitted for the first time on appeal." (citations omitted)); *cf. Altawil v. INS*, 179 F.3d 791, 792–93 (9th Cir.1999) (declining to remand after a brief analysis noting only that IIRIRA precluded use of the § 2347(c) mechanism). We do not quarrel with these other Circuits' conclusions regarding our power under § 2347(c) after IIRIRA, but we disagree to the extent that they assume that we lack any other power to remand. If before IIRIRA we possessed the inherent equitable power to remand to the BIA, IIRIRIA does not appear to offer anything "akin to a clear indication of legislative intent" to deprive us of this inherent power in all circumstances.

Moreover, none our sister Circuits have considered whether to remand on the basis of evidence as compelling and potentially significant for such a large number of similarly situated petitioners as the *Shou Yung Guo* documents. *See Gebremaria*, 378 F.3d at 737 (declining to supplement the record on appeal with an affidavit from a family member); *Al Najjar*, 257 F.3d at 1277 (declining to supplement the record on appeal with newspaper clippings, letters from an embassy and Amnesty International reports). Given the unusual and profoundly important circumstances of this case, in which another panel of our Court has identified what might be evidence of an official policy of forcible sterilization to which Lin could be subjected if returned to his home region in China, it could be argued that the exercise of our inherent power to remand would be justified.

■ We have never explicitly held that we possess the inherent power to remand to an administrative agency for consideration of new evidence, and we need not decide this question to dispose of this case. The government appears to agree that the important issues presented here should be decided by the BIA in the first instance, and it concurs in our decision to remand. It articulates a different basis for our authority to do so, however. Relying on a recent decision of the Seventh Circuit, *Xue Y. Ren v. Gonzales*, 440 F.3d 446 (7th Cir.2006), the government argues that a court of appeals may remand a case to the BIA where, as here, the government "does not confess error, but desires a remand to allow further consideration by an administrative agency." The Seventh Circuit in *Xue Y. Ren* reasoned that remanding at the government's request shows proper respect for agency decision making, enables the BIA to respond to emerging case law in the courts of appeals, and comports with Supreme Court guidance. *Id.* at 448 (citing, *inter alia, Lawrence v. Chater*, 516 U.S. 163, 165–74, 116 S.Ct. 604, 133 L.Ed.2d 545 (1996) (per curiam)). It also noted that because the Attorney General can deprive a court of appeals of jurisdiction over a decision of the BIA by ordering it referred to him or her for review, it makes sense to allow the Attorney General to take the less drastic step of requesting a remand to the BIA. *Id.* at 448–49. Here, the government asks us to remand because it anticipates a precedential decision from the BIA following remand in *Shou Yung Guo* that will address the validity and import of the documents discussed there.

Because both parties ask us to remand, we need not decide whether we may remand simply because the government requests it. Nor need we decide whether we could remand in the exercise of our inherent equitable powers if the government did

not concur in our decision to do so. Regardless of the basis, remand in this case is appropriate. We emphasize that in returning this case to the BIA, we are not finding that the *Shou Yung Guo* documents are authentic or that they establish the existence of an official policy of forcible sterilization in Changle City or Fujian Province generally. Rather, important questions remain undecided regarding China's family-planning policy that the BIA is best equipped to answer in the first instance. *See Qun Yang*, 277 F.3d at 162 ("Remand to the [BIA] recognizes that [it] is the adjudicative body having primary responsibility and experience in asylum matters.").

## CONCLUSION

For the foregoing reasons, although we deny Lin's motion to remand on the basis of new evidence, we REMAND this case to the BIA for further proceedings consistent with this opinion.