**JIAN HUA XIA, Petitioner,**

v.

**Alberto GONZALES, Respondent.**

No. 06–2128–ag.

United States Court of Appeals,
Second Circuit.

Sept. 10, 2007.

Vlad Kuzmin, New York, NY, for Petitioner.

Stephen J. Murphy, United States Attorney for the Eastern District of Michigan, Cynthia Oberg, Assistant United States Attorney, Detroit, MI, for Respondent.

PRESENT: Hon. GUIDO CALABRESI, Hon. B.D. PARKER and Hon. RICHARD C. WESLEY, Circuit Judges.

## 242

### SUMMARY ORDER

Jian Hua Xia, a native and citizen of the People's Republic of China, seeks review of an April 4, 2006, order of the BIA affirming the October 8, 2004, decision of Immigration Judge ("IJ") William P. Van Wyke denying Xia's applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Jian Hua Xia*, No. A95 301 864 (B.I.A. Apr. 4, 2006), *aff'g* No. A95 301 864 (Immig. Ct. N.Y. City Oct. 8, 2004). We assume the parties' familiarity with the underlying facts and procedural history of the case.

When the IJ's decision rests on multiple alternate grounds and the BIA adopts and affirms that decision without expressly addressing each of the grounds, we may review the entire IJ decision and need not confine our review to the grounds expressly addressed by the BIA. *See Ming Xia Chen v. BIA*, 435 F.3d 141, 144 (2d Cir. 2006). We review the agency's factual findings, including adverse credibility determinations, under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see, e.g., Zhou Yun Zhang v. INS*, 386 F.3d 66, 73 & n. 7 (2d Cir.2004). However, we will vacate and remand for new findings if the agency's reasoning or its fact-finding process was sufficiently flawed. *See Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 406 (2d Cir.2005); *Tian–Yong Chen v. INS*, 359 F.3d 121, 129 (2d Cir.2004).

Here, the IJ's findings of implausibility are based on speculative reasoning and misstatements of Xia's testimony. The IJ found Xia's testimony implausible because (1) his claim was limited to his last few months in China; (2) the church group was small; (3) neither his wife nor son were part of his church; (4) there were no children in the church; (5) the church was raided only two months after he was baptized; and (6) Xia did not tell his fellow church members in Corona about what happened to him in China, but did tell those from his church in Los Angeles.

While the IJ is permitted to consider "common sense and ordinary experience" in finding an asylum applicant's testimony implausible, an implausibility finding is impermissibly speculative where it is not supported by a single record fact. *Siewe v. Gonzales*, 480 F.3d 160, 168–69 (2d Cir. 2007). Here, there is no evidence in the record to support any of these assumptions.

The IJ also impermissibly faulted Xia for not knowing how long the church in China had existed; but the transcript does not indicate that Xia was ever asked this question. Moreover, Xia did not assert that he was a leader in his church group, or that learning the history of the church was a requirement for membership. *Cf. Yose Rizal v. Gonzales*, 442 F.3d 84, 90 (2d Cir.2006) (finding that the lack of knowledge cannot be held against an applicant who does not claim to be an expert in or have a deep understanding of the religion in question). Therefore, Xia's lack of knowledge about the church's history does not support the IJ's adverse credibility determination.

The IJ also faulted Xia for stating that there were "two or three" other churches like his in his community, finding that Xia's answer was "a kind of equivocation," and that Xia "should know or at least have a memory of which ones there were or how many of them there were." However, this finding was again based on a misstatement of Xia's testimony. Xia was not asked

whether there were other churches "like his," *i.e.*, underground churches, as the IJ indicates. Rather, the IJ asked Xia a very different question: "In your village were there (indiscernible) were there any churches that were actually buildings where people could go to?" When asked why he did not attend any of them, he responded, "Because when I joined my church the brothers and sisters of my church told me I should not (indiscernible) in (indiscernible) government sanctioned church." His reply, that there were "two or three" of these government-sanctioned churches in the neighborhood, was not unreasonable, given his apparent lack of interest in joining them.

The IJ further faulted him for not knowing about the government's destruction of churches in Wenzhou while he was in China, since he testified that he heard about it only when he reached Los Angeles. However, the IJ's expectation that such information is available to the general public in China is impermissibly speculative, when nothing in the record so suggests.[1] *See Cao He Lin*, 428 F.3d at 405 (absent record evidence of practices in foreign countries, the IJ must not speculate as to the existence or nature of such practices).

The IJ again misstated Xia's testimony when he found implausible Xia's assertion that his church, "small as it was, didn't have really [sic] relation with any of the other churches." However, Xia did not testify that his church did not have rela-

tionships with other churches; rather, he stated that he did not know because "the length of my relationship with them was quite short." The IJ also misstated Xia's testimony regarding visitors to his church. According to the IJ, Xia testified that "[t]hey had no visitors going from their church to others or from the other churches to theirs." Xia did not testify that his church never had any visitors or that members of his church never went to visit other churches; rather, he asserted that visitors did not come to his church to talk about the situation of Christians elsewhere. Given these misstatements of Xia's testimony, the IJ's conclusion that the isolation of his church "appears more a sign of limited risk taking in presenting a case than it does appear the reality of a situation that a religious community would have," is erroneous and may not be used to support his adverse credibility finding.

The IJ determined that Xia's failure to produce witnesses to corroborate what happened in China, his failure to explain their absence, and his failure to produce corroboration from people from his present church, combined with his findings of implausibility, support his adverse credibility finding. However, because those implausibility findings were erroneous, the adverse credibility determination may not stand, since a finding of lack of corroboration cannot form the sole basis for an adverse credibility determination. *See Diallo v. INS*, 232 F.3d 279, 287 (2d Cir. 2000). Therefore, the case is remanded

---

1. Moreover, the U.S. Department of State Country Report on Human Rights Practices for China—2001 (2001 USDOS Report), which is the year that Xia left China, indicates that the Chinese government maintained tight restrictions on the media, and required prior approval of broadcasts and publications. While the 2001 USDOS Report is not part of the record, this Court may take judicial notice of its contents, since it is a readily accessible report, and this particular assertion, that the Chinese government strictly controls the press, is not subject to reasonable dispute. *See, e.g., Tian Ming Lin v. U.S.D.O.J.*, 473 F.3d 48, 51 (2d Cir.2007) (per curiam); *Latifi v. Gonzales*, 430 F.3d 103, 106 n. 1 (2d Cir. 2005) (per curiam).

for a new determination of Xia's credibility.

Remand is also required to determine whether Xia merits asylum based on his well-founded fear as a Christian, since the IJ credited his assertion that he is a practicing Christian, and that Christians in China and in the province where Xia is from are persecuted. We also remand this case for a redetermination of Xia's withholding of removal and CAT claims, since the denial of those claims was premised solely on the denial of his asylum claim. *See Fen Yong Chen v. BCIS,* 470 F.3d 509, 515 (2d Cir.2006).

For the foregoing reasons, the petition for review is GRANTED. Having completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DISMISSED as moot. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34(d)(1).