# United States Court of Appeals

## For the First Circuit

No. 06-2749

AIHUA CHIV WANG,

Petitioner,

v.

MICHAEL B. MUKASEY\*, Attorney General

Respondent.

ON PETITION FOR REVIEW OF AN ORDER

OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch and Lipez, <u>Circuit Judges</u>
and Barbadoro\*\*, <u>District Judge</u>.

<u>William P. Joyce</u>, on brief for petitioner.
<u>Melissa Neiman-Kelting</u>, Office of Immigration Litigation
Attorney, <u>Peter D. Keisler</u>, Assistant Attorney General, and <u>Mary
Jane Candaux</u>, Senior Litigation Counsel, on brief for respondent.

November 29, 2007

---

\* Pursuant to Fed. R. App. P. 43(c)(2), Attorney General
Michael B. Mukasey is substituted for former Attorney General
Alberto R. Gonzales as respondent.

\*\* Of the District of New Hampshire, sitting by designation.

**LIPEZ**, **Circuit Judge**. Petitioner Aihua Chiv Wang, a native of Laos and a citizen of the People's Republic of China, petitions for review of the denial of her application for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). She also requests that we remand the case for reconsideration based on changed country conditions. We deny the petition.

I.

Wang was born on February 10, 1974 in Laos and lived there until July 5, 1990, when she arrived in Chicago, Illinois on a tourist visa. On July 5, 1992, Wang received a student visa. As of June 1995, she ceased to be a student but remained in the United States without obtaining a new visa.[1] In 2000, Wang received a Notice to Appear alleging that she was removable because she failed to maintain her student status.

At a hearing in 2005 before an Immigration Judge (IJ), she conceded removability and applied for asylum, withholding of removal, protection under the CAT, and, in the alternative, voluntary departure. When Wang declined to designate a country of removal, the IJ designated China – the only country in which Wang

---

[1] She applied for asylum in 1994 claiming that she feared being persecuted for her anti-communist beliefs. She has since repudiated her statements in the 1994 asylum application, most notably her assertions that her father was accused by the Laotian government of being a spy for the Chinese government, that he was sent to re-education camps in Laos for seven years, and that Wang, herself, has a Laotian passport.

has citizenship.  See 8 C.F.R. § 1240.10(f).  Wang testified that she feared going to China because of its coercive population control measures.  Wang already has one daughter – born in 2003 as a United States citizen – and testified that she would like to have more children.  She worries that if she were forced to live in China, she would be unable to have more children because of China's "one-child" policy.

Wang submitted evidence to the IJ that included U.S. State Department Reports.  These reports characterized Chinese population control policies as restrictive, but also as highly particularized.  The 2004 Report, entitled Country Report on Human Rights Practices, noted that enforcement of the population and family planning laws "continued to vary from place to place" and allowed "eligible couples to apply for permission to have a second child if they met conditions stipulated in local and provincial regulations."  According to the 2004 Report, physical coercion was formally prohibited as a method of enforcing family planning policies, but economic and social penalties were allowed and frequently used.

Based on all of the evidence presented, the IJ found that the "Chinese government does persecute Chinese nationals who break the coercive family planning policy of China by having more than one child without the permission of the Chinese government."  Yet, the IJ decided that given the particularized nature of these

-3-

policies, Wang did not demonstrate that she or someone similarly situated would face persecution. The IJ noted that Wang had not shown that with a foreign-born child she would be subject to the one-child policy or that she would be persecuted for being single and having a child.

The IJ thus concluded that the evidence provided was insufficient to establish that (1) Wang had a well founded fear of persecution, 8 U.S.C. § 1101(a)(42)(A), (2) she would be more likely than not to have her life or freedom threatened if she were removed to China, 8 C.F.R. § 1208.16(b)(2), or (3) she would be more likely than not to be tortured by the Chinese government or its agents, 8 C.F.R. § 1208.16(c)(2). Accordingly, the IJ denied Wang's petition for asylum, withholding of removal, and CAT relief. The IJ did, however, grant her request for voluntary departure.

In an appeal to the Board of Immigration Appeals (BIA), Wang argued that the record clearly demonstrated that she would be subject to China's coercive population control measures in spite of her daughter's American citizenship. Wang also asserted that because she is a single woman, she would be even more susceptible to these coercive measures.

The BIA affirmed the IJ's decision on the ground that Wang has only one child, who was born in the United States, and she therefore would not presently be subject to persecution for having more than one child. The BIA also found that the evidence was

-4-

insufficient to support Wang's contention that single women are persecuted in China for having children out of wedlock. It further characterized as "speculative at present" Wang's claim that she would be persecuted if she had additional children while living in China.

This petition for review followed. In it, Wang argues that the BIA erred in determining that she did not have the requisite well founded fear of persecution to establish eligibility for asylum. She also claims that the BIA should have found her eligible for withholding of removal and for relief under the CAT. In addition, Wang argues that she is entitled to a remand based on changed conditions in China with respect to foreign-born children. Therefore, she asks us to direct the BIA to consider this new information.

## II.

The BIA adopted the IJ's opinion and also addressed the underlying bases for the denial of asylum. We therefore review both the IJ's and BIA's decisions. Ouk v. Gonzalez, 464 F.3d 108, 110 (1st Cir. 2006)(finding that "we have authority to review both the IJ's and the BIA's opinions" when the BIA adopts the IJ's opinion and discusses some of the bases for the IJ's decision). We review legal issues de novo and apply the substantial evidence standard to the factual determinations. Mukamusoni v. Ashcroft, 390 F.3d 110, 119 (1st Cir. 2004). Under the highly deferential

-5-

substantial evidence standard, we consider whether the agency's ruling is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Lopez de Hincapie v. Gonzales, 494 F.3d 213, 218 (1st Cir. 2007) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)). We will not upset the BIA's determination unless the record compels the contrary conclusion. Id.

**A. Asylum**

To qualify for asylum, an alien needs to demonstrate that she is a refugee by virtue of her previous persecution or her well founded fear of future persecution based on race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1158(b)(1); Berrio-Barrera v. Gonzales, 460 F.3d 163, 167 (1st Cir. 2006). We need not discuss the standard for a finding of past persecution because Wang makes no such claim. With regard to a fear of future persecution, the applicant must demonstrate that she objectively has a well founded fear of persecution on a protected ground and that this fear is genuine. Aguilar-Solis v. INS, 168 F.3d 565, 572 (1st Cir. 1999)(proving the objective and subjective components of a well founded fear of future persecution requires the petitioner to show her fear is "both genuine and objectively reasonable"). Fear of forced abortion or sterilization is categorized as fear of persecution on account of political opinion. 8 U.S.C. § 1101(a)(42)("A person who

-6-

has a well founded fear that he or she will be forced to undergo [a forced abortion or sterilization] procedure or [is] subject to persecution for failure, refusal, or resistance [to undergoing such a procedure] shall be deemed to have a well founded fear of persecution on account of political opinion."); Zheng v. Gonzales, 475 F.3d 30, 34 (1st Cir. 2007).

Wang contends that the BIA erred by relying on the IJ's determination that her fear of persecution was unreasonable solely because she had not been subject to past persecution.  The IJ did not base its decision exclusively on the determination that Wang had not been subject to past persecution and, therefore, the BIA did not err when it relied on the IJ's findings.  As required, the BIA considered the evidence in the record in order to determine whether Wang's fear of future persecution was reasonable.  After examining the record, the BIA justifiably concluded that the State Department's 2004 Report "indicates that only social compensation fees have been levied on unwed mothers and that in some instances these fees have been abolished and relaxed in other instances."

Wang also argues that the IJ and BIA erred in not giving greater weight to her expressed intentions to have additional children and by dismissing these intentions as "speculative."  She relies on the Second Circuit's decision in Lin v. Gonzales, 445 F.3d 127 (2d Cir. 2007), for the proposition that the IJ is required to provide "specific, cogent reasons for discounting an

-7-

applicant's claim [that she plans to have additional children] as speculative" when the asserted fear of persecution is based on the applicant's intention to have children. Id. at 136. We need not decide whether Wang's reading of Lin is correct or whether we agree with that reading; this principle is not at stake here.

Neither the IJ nor the BIA dismissed Wang's plans to have additional children as speculative. Rather, both the IJ and BIA focused on China's family planning policies and the likelihood they would be applied in Wang's particular circumstances. The IJ said: "[I] find that the respondent's testimony concerning wishing to have further children if she were to go to China and that she will be prohibited from having more children in China because of Chinese coercive family planning policy in China, is at best speculative and based on surmise." Similarly, the BIA determined that "to the extent that the respondent claims that she wishes to have additional children in the future and that she would be persecuted in China for such births, we find the respondent's claims speculative at present." We understand the IJ and BIA to have found that persecution based on additional births was speculative, not the births themselves. Thus, Wang's claim falters on the objective prong of the well founded fear of future prosecution analysis.

## B. Withholding of Removal and Convention Against Torture

Wang, having failed to establish her eligibility for asylum, necessarily fails in her claim for withholding of removal. Berrio-Barrera, 460 F.3d at 168; Rodriquez-Ramirez v. Ashcroft, 398 F.3d 120, 123 (1st Cir. 2005) (finding that because the burden of proof necessary to establish an asylum claim is lower than the burden of proof required to prevail on a withholding of removal claim, "the BIA's rejection of the petitioner's asylum claim, if sustainable, sounds the death knell for his counterpart claim for withholding of removal"). Similarly, the BIA rightly concluded that it had no basis for finding that Wang was eligible for relief under the CAT because she had not proven that she was more likely than not to be tortured upon being removed to China. See 8 C.F.R. 1208.16(c); Jiang v. Gonzales, 474 F.3d 25, 32 (1st Cir. 2007).

## C. Remanding for Consideration of Changed Circumstances

In an unusual request, Wang asks in the alternative that we remand her case to the BIA for consideration of two Second Circuit cases that, according to Wang, conclude that parents of foreign-born children are subject to the same rules as parents of native-born children under Chinese family planning policies.[2] The government argues that this request is not properly before us

---

[2] Wang cites Guo v. Gonzales, 463 F.3d 109 (2d Cir. 2006), and Tin Ming Lin v. United States Dep't of Justice, 473 F.3d 48, 52 (2d Cir. 2007), as "new" evidence in support of her position that parents with two or more children are being forcibly sterilized in China irrespective of whether the children are foreign-born.

because Wang should have brought before the BIA a motion to reopen pursuant to 8 C.F.R. § 1003.2.  Wang does not explain why she did not file a motion to reopen with the BIA nor does she support her unusual request with any developed argument that we have the authority to consider on appeal changed circumstances that might be the basis for a remand.[3]  Thus, we deem this argument for a remand waived.  Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 43 (1st Cir. 2003)("Issues raised on appeal in a perfunctory manner (or not at all) are waived.").

## III.

We conclude that the BIA justifiably denied Wang's petitions for asylum, withholding of removal, and CAT, and that Wang has waived her argument that we should remand for consideration of changed circumstances.

Petition denied.

---

[3] In Tian Ming Lin, the Second Circuit concluded that "there is no statutory mechanism by which a party may move this Court to remand to the BIA . . . .  Nonetheless, we believe that we possess the inherent equitable power to remand cases to administrative agencies for further proceedings in sufficiently compelling circumstances."  473 F.3d at 52.  We take no position on this conclusion.