[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-15744

_____

Agency No. A072-473-382

XIAO KUI LIN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(March 4, 2014)

Before TJOFLAT and MARCUS, Circuit Judges, and VINSON,[*] District Judge.

PER CURIAM:

Xiao Kui Lin, a native and citizen of China, Fujian Province, petitions for

_____

[*] Honorable C. Roger Vinson, United States District Judge for the Northern District of
Florida, sitting by designation.

review of the order from the Board of Immigration Appeals (BIA), affirming the Immigration Judge's (IJ) denial of asylum, withholding of deportation, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT). After full review of the briefs and oral argument, the petition is denied.

I.

While he was previously living in New York, Lin filed for asylum in 1993 under the Immigration and Nationality Act (INA), but an IJ denied his application and ordered him excluded. In 2002, Lin sought to reopen his proceedings, which the IJ granted. Lin subsequently filed an amended asylum application indicating that he feared being sterilized by the Chinese government because he was married and, at that time, had one U.S.-born child. In 2004, an IJ denied asylum, and the BIA affirmed. However, in 2009, the Second Circuit Court of Appeals reversed and remanded the case to the BIA. Because Lin had since moved to Jacksonville, the case was transferred to an IJ in Florida.

At the time of the Florida proceedings, Lin and his wife, Zhao Ming Yang, had three additional children, all of whom had been born in this country and had U.S. passports. He presented evidence that a number of family members who had children in China had been sterilized under that country's family-planning policies. He testified that, if returned to China, he would attempt to register his four children

2

in the household registry (which would be required of them to establish permanent residency), but registration might not be possible. Lin also presented evidence that officials in Fujian Province continued to forcibly sterilize individuals who violated the family-planning policies, and that Chinese officials did not distinguish between native-born and foreign-born children. One piece of the evidence was an unsigned and unauthenticated letter purportedly from the Family Planning Office of Mawei District, which was obtained by Lin's father for purposes of the proceedings.

The government presented evidence, including the U.S. State Department's 2007 Profile of Asylum Claims and Country Conditions for China (2007 Profile), and its 2009 Human Rights Report, reflecting that population control policies in China are no longer implemented by forcible, coercive means and that the Fujian officials distinguish between native-born and foreign-born children. The reports indicated that foreign-born children of Chinese nationals were not counted against the families, or, if they were counted, the families would only face monetary fines.

The IJ denied Lin's applications, and Lin appealed the denial of asylum to the BIA. In affirming the IJ's decision, the BIA noted that the Family Planning Office letter had limited weight because it was unsigned and unauthenticated. The BIA also found that Lin's family members who were sterilized were not similarly situated because their children were born in China. The BIA found that the State Department reports were reliable, and continued to accord greater weight to those

3

reports, which did not indicate that Fujian Province carried out coercive measures. There also was no evidence of persecutory measures being imposed on parents of U.S.-born children. The BIA further found that Lin presented no evidence to show a risk of economic persecution if returned to China.

On this appeal, Lin asserts that the BIA erred in concluding that he failed to establish an objectively reasonable, well-founded fear that he would be forcibly sterilized or face economic persecution if he is returned to China. He asserts that the place where his children were born is irrelevant, and there was evidence that his children would be counted for family-planning purposes. He raises concerns about the State Department reports and argues that the BIA did not meaningfully analyze how any potential fine (which could possibly be in excess of ten times his income) would impact him and his family. Alternatively, Lin asks that we remand the case to the BIA for reconsideration of evidence regarding China's treatment of foreign-born children, including new evidence "submitted in other pending cases," such as Tian Ming Lin v. Gonzales, 473 F.3d 48 (2d Cir. 2007).

II.

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. Alhuay v. U.S. Att'y Gen., 661 F.3d 534, 546 n.12 (11th Cir. 2011); Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Here, the BIA issued its own decision without expressly

adopting the IJ's decision, so only the BIA's decision is under review.

Our review of administrative factual determinations regarding eligibility for asylum is under the highly deferential substantial-evidence standard, and we must affirm the BIA if its opinion is supported by reasonable, substantial, and probative evidence. Al Najjar, 257 F.3d at 1283-84. We will reverse a finding of fact made by the BIA only when the record compels reversal; not when it merely supports a contrary conclusion. Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc). We may not reweigh the evidence. Ayala v. U.S. Att'y Gen., 605 F.3d 941, 948 (11th Cir. 2010). A petitioner must show on appeal that the evidence he presented was such that any reasonable factfinder would have to conclude that the requisite likelihood of persecution existed. I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, 112 S. Ct. 812, 815, 117 L. Ed. 2d 38 (1992).

We lack jurisdiction to consider claims raised in a petition for review unless the petitioner has exhausted his administrative remedies by raising those claims before the BIA. Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1251 (11th Cir. 2006). Issues that a petitioner fails to raise in his opening brief are waived through abandonment. See Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1256 n.6 (11th Cir. 2006) (petitioners abandoned issue by failing to argue it in their initial brief).

The INA does not expressly define "persecution" for purposes of qualifying as a "refugee." See generally 8 U.S.C. § 1101. The statute does provide, however,

that:

> For purposes of determinations under this chapter, a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

Id. § 1101(a)(42).

When an asylum applicant does not demonstrate past persecution, proof of a well-founded fear of future persecution becomes necessary. See De Santamaria v. U.S. Att'y Gen., 525 F.3d 999, 1007 (11th Cir. 2008). An asylum applicant must demonstrate that there is "a reasonable possibility" of persecution if the applicant returned to his home country. Chen v. U.S. Att'y Gen., 672 F.3d 961, 965 (11th Cir. 2011). In addition to having a subjectively genuine fear of persecution upon being returned to his country, an applicant must prove an objectively reasonable fear of persecution, which requires that the applicant establish that he "has a good reason to fear future persecution." De Santamaria, 525 F.3d at 1007 (quotation omitted).

The BIA has held that, in order to qualify for asylum based on a violation of China's family planning/population control policies, the alien must demonstrate: (1) "that the births violated family planning policies in that alien's local province, municipality, or other locally-defined area," and (2) "that current local family

6

planning enforcement efforts would give rise to a well-founded fear of persecution because of the violation." In re J-H-S, 24 I. & N. Dec. 196, 197-98 (BIA 2007). In addition, fines may amount to persecution in certain circumstances, if they cause "severe economic disadvantage," considering the alien's net worth, other sources of income, and the conditions of the local economy. See In re T-Z, 24 I. & N. Dec. 163, 173-74 (BIA 2007). The BIA has stated that economic sanctions which leave an applicant in "an impoverished existence" can amount to persecution even if the applicant can still afford the bare essentials of life. Id. at 174.

The BIA is entitled to "rely heavily" on State Department reports. Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1243 (11th Cir. 2004). This includes, specifically, the 2007 Profile. See Xiu Ying Wu v. U.S. Att'y Gen., 712 F.3d 486, 495 (11th Cir. 2013) (noting, in the context of considering the 2007 Profile, that "[w]e have consistently indicated that the BIA and IJ are 'entitled to rely heavily' upon State Department country reports") (citing and quoting Reyes-Sanchez, 369 F.3d at 1243).[1] However, reliance on country reports "cannot substitute for an analysis of the unique facts of each applicant's case," and the BIA and IJ may not rely exclusively on the State Department reports while failing to consider credible, specific evidence that supports the applicant's claims. Seck v. U.S. Att'y Gen., 663

---

[1] We recognize that some courts, including the Seventh Circuit Court of Appeals, have been critical of the BIA's reliance on the 2007 Profile. See Qiu Yun Chen v. Holder, 715 F.3d 207, 209-10, 214 (7th Cir. 2013). Nonetheless, as indicated in the text above, heavy reliance on the 2007 Profile is permissible under precedent in this circuit.

F.3d 1356, 1368 (11th Cir. 2011) (quotation omitted). In considering the evidence, the BIA may discount unauthenticated documents. See Xiu Ying Wu, 712 F.3d at 497 ("we cannot depend on [the] veracity of unauthenticated documents") (citing and quoting Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1202 n.3 (11th Cir. 2005)).

## III.

As an initial matter, Lin failed to exhaust, and since has abandoned, any challenges to the IJ's denial of withholding of deportation and CAT relief. With regard to his asylum claim, while he presented evidence of forced sterilization in China and evidence that his U.S.-born children would be counted against him for family planning purposes, the record contained some evidence to the contrary, including reports --- such as, but not limited to, the 2007 Profile --- on which the BIA was entitled to rely. See, e.g., R. 176, 179-80, 379, 390, 405, 454, 457.

Our decision in Xiu Ying Wu, supra, does not compel a different result. The panel in that case vacated the BIA for relying heavily and exclusively on the 2007 Profile in making an adverse credibility determination when there was no evidence that the petitioner was not credible as to her claim that she would be subject to and persecuted under China's family planning policies if she was removed and returned to that country. See generally 712 F.3d at 486. As the panel explained: "[N]othing about Wu in this particular case was found lacking in credibility. Instead, the BIA and IJ concluded that Wu lacked credibility because the substance of her story did

8

not conform to State Department accounts of life in China. Our precedent, however, dictates that the '[u]se of country reports cannot substitute for an analysis of the unique facts of each applicant's case.'" Id. at 496 (citation omitted; emphasis original). That is not the situation here. The BIA did not rely exclusively on the 2007 Profile and use it as a substitute for analysis. Nor did it use the 2007 Profile as the sole basis for an adverse credibility determination. To the contrary, the BIA "accept[ed] the truth of the testimonies of [Lin] and his wife and the evidence for purposes of appellate review." See BIA Op. at 2. Nevertheless, it affirmed the IJ because the evidence on the forced sterilization issue (including evidence relating to members of Lin's family who were purportedly forcibly sterilized) did not arise out of similar factual situations. See id. Specifically, the BIA stated:

> While there undoubtedly have been instances of forced abortion and sterilization imposed on the parents of children conceived and born in China, the issue before us in this case is different because the children involved here were born in the United States, and hence are citizens of this country. The evidence submitted in this case does not document any instance where enforcement measures rising to the level of persecution have been imposed on the parents of children who are United States citizens. Thus, even assuming that forcible measures are more widely used than admitted by Chinese authorities and as reflected in State Department reports, the evidence does not show that such measures are employed in circumstances analogous to this case.

Id. at 3. Although there is some evidence in the record indicating that the Chinese government may not (at least consistently) recognize a distinction between foreign-born and native-born children, there is evidence that such distinction is recognized.

9

Insofar as we cannot reweigh this conflicting evidence under our highly deferential standard of review, the record of this case --- which has been acknowledged by the parties to be relatively sparse --- does not compel a different result from the BIA's determination. See, e.g., Adefemi, 386 F.3d at 1027 (stating that factual findings by BIA may be reversed "only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify reversal of the administrative findings") (emphasis added).[2]

In addition, Lin failed to present any evidence regarding the potential impact of monetary fines that he might face. There is, for example, no record evidence of Lin's financial situation or background. Thus, substantial evidence also supports the BIA's determination that Lin failed to establish an objectively reasonable well-founded fear that he would be excessively fined if removed and returned to China.

Our review under the INA is limited to the administrative record. 8 U.S.C. §

---

[2] Lin asserts that, in Li v. U.S. Att'y Gen., 488 F.3d 1371 (11th Cir. 2007), we "criticized the BIA for finding a distinction between foreign-born and native-born children in the context of China's family planning policies." Pet. Brief at 23. However, Li involved a different situation. In that case, which arose out of the denial of a motion to reopen removal proceedings, we held that the BIA erred in drawing the distinction between native-born and foreign-born children because, on the facts presented, there was a complete absence of evidence in the record to support it. See id. at 1376 ("In Li's appeal, the BIA invoked this distinction despite the absence of any evidence in this record . . . that either the Chinese national government or local Fujian officials distinguish between parents of children born abroad and parents of children born in China.") (emphasis added). In fact, as we noted in that case, "the only evidence in this record supports the opposite conclusion." Id. That is not the same situation here since, as noted above, there was evidence in the record and relied on by the BIA that China does, indeed, make that distinction. Once again, while there may be some evidence to the contrary, we cannot reverse the BIA just because "the record may support a contrary conclusion." Adefemi, 386 F.3d at 1027.

1252(b)(4)(A). We may not order remand for consideration of new evidence that was not previously presented to the IJ or BIA. See 8 U.S.C. § 1252(a)(1) (stating that a reviewing court "may not order the taking of additional evidence" under 28 U.S.C. § 2347(c)); see also Al Najjar, 257 F.3d at 1278-79, 1281 (explaining that the Illegal Immigration Reform and Immigrant Responsibility Act eliminated our authority to remand to the BIA for consideration of new evidence). Consequently, pursuant to Section 1252(a)(1), we do not have the authority to grant Lin's request to remand his case so that he may present new evidence to the BIA.[3]

## IV.

Upon review of the record on appeal, and after consideration of the parties' briefs and following oral argument, we deny the petition.

**PETITION DENIED.**

---

[3] In requesting that this case be sent back to the BIA, Lin relies on Tian Ming Lin v. Gonzales, 473 F.3d 48 (2d Cir. 2007), wherein the Second Circuit remanded to the BIA for consideration of additional evidence suggesting that forced sterilization is indeed part of the official family-planning policy in the Fujian Province. Notably, in remanding that case, the Second Circuit recognized that "there is no procedure by which a petitioner can make a motion in the court of appeals to remand a case for consideration of new evidence." Id. at 49. Remand was allowed in that case because both sides requested it, which the government had argued was the "only" way the court could do so. Id. at 49-50. The government has not requested a remand here. To the extent that Lin went on to suggest in dicta that the court of appeals might have had the "inherent" power to order remand even if the government had not asked for it, the Second Circuit subsequently addressed this dicta and held that the court had no such authority --- at least not in the absence of "extraordinary and compelling circumstances." See generally Xiao Xing Ni v. Gonzales, 494 F.3d 260 (2d Cir. 2007).

11